# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Target Device 1 through Target Device 6 | ) ) ) ) ) ) Case No.  **FILED**<br>AUG 26 2019<br>CLERK US DISTRICT COURT<br>SOUTHERN DISTRICT OF CALIFORNIA<br>BY _____ DEPUTY<br>**19MJ3599** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952 and 960 | Importation of Methamphetamine and Heroin |

The application is based on these facts:

See attached Affidavit of Special Agent Marina Griffin

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Marina Griffin, Dep't of Homeland Security
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/26/19

*Judge's signature*

City and state: San Diego, CA          Hon. Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Tracfone Wireless
    Model A502DL
    IMEI: 015423006299538
    S/N: 015423006299538
    (**"Target Device 1"**)

    Gold Motorola Moto
    Model XTI765PP
    FCC ID: IHDT56WC1
    IMEI: 359536092306034
    (**"Target Device 2"**)

    Steel grey Lanix
    Model X530
    FCCID: ZC4X530
    IMEI: 356726091594234
    (**"Target Device 3"**)

    Steel grey Alcatel
    Model A574BL
    FCCID: 2ACCJB079
    IMEI: 015295005489645
    (**"Target Device 4"**)

    White iPhone XS Max
    S/N: G6TXQ3ZCKPHD
    MEID: 35727409833236
    IMEI: 35727409830381-1
    (**"Target Device 5"**)

       UMX
       Model U683CL
       S/N: 683CL00519001838
       FCC ID: P45-U683CL
       MEID HEX: 99001318275376
       (**"Target Device 6"**)

(collectively, the **"Target Devices."**)

      The **Target Devices** are currently in the possession of the Homeland Security Investigations, 880 Front Street, San Diego, California 92101.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 7, 2019 to July 7, 2019:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

# AFFIDAVIT IN SUPPORT OF WARRANT

I, Marina Griffin, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for warrant to search the following electronic devices (collectively, "**Target Devices**"):

Tracfone Wireless
Model A502DL
IMEI: 015423006299538
S/N: 015423006299538
("**Target Device 1**")

Gold Motorola Moto
Model XTI765PP
FCC ID: IHDT56WC1
IMEI: 359536092306034
("**Target Device 2**")

Steel grey Lanix
Model X530
FCCID: ZC4X530
IMEI: 356726091594234
("**Target Device 3**")

Steel grey Alcatel
Model A574BL
FCCID: 2ACCJB079
IMEI: 015295005489645
("**Target Device 4**")

White iPhone XS Max
S/N: G6TXQ3ZCKPHD
MEID: 35727409833236
IMEI: 35727409830381-1
("**Target Device 5**")

//
//
//

1

```
UMX
Model U683CL
S/N: 683CL00519001838
FCC ID: P45-U683CL
MEID HEX: 99001318275376
```
(**"Target Device 6"**)

as described in Attachment A (incorporated herein by reference), and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960.

2. The **Target Devices** were seized from Diamond Denise LUSTER ("LUSTER") and Kajanae Tierra WELLS ("WELLS") incident to their arrest for violation of Title 21, United States Code, Sections 952 and 960, Importation of Methamphetamine and Heroin, at the Otay Mesa California Port of Entry on July 7, 2019. The **Target Devices** are currently in the possession of the Homeland Security Investigations, 880 Front Street, San Diego, California 92101.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B (incorporated herein by reference.)

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times, and amounts are approximate.

//
//
//
//

## EXPERIENCE AND TRAINING

5. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since August 2003. I am currently assigned to the Prosecutions Team as the District Attorney's Office Liaison in San Diego, California. In the course of my duties over the years, I have been the case agent on several drug-related investigations. I have conducted surveillance and participated in the execution of search warrants in drug trafficking investigations. I executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have interviewed defendants, witnesses, and informants while conducting drug trafficking investigations. I gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

6. My training includes attending the Federal Law Enforcement Training Center, where I completed six months of HSI Special Agent Training. My training and experience, involved courses inclusive of but not limited to criminal law, constitutional law, and enforcement techniques, including but not limited to, undercover operations, search warrants and arrest warrants. I received training in conducting narcotics investigations. I have become familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics. I am familiar with, and have participated in, all of the normal methods of investigation including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of confidential sources and informants, and the use of undercover agents. I have a knowledge base in detecting elements of criminal activity as it relates to narcotics/currency smuggling, gang investigations, money laundering and identity theft.

7. Based on my training and experience as a HSI Special Agent, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded

3

movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed arrests for drug-related offenses, including possession with the intent to distribute; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

    f. Drug smugglers therefore generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators.

9. Based on my training and experience, including consultations with other law enforcement personnel, I know that drug traffickers commonly use electronic devices such

4

as cellular telephones to store names, telephone numbers, records, drug ledgers, and other information pertaining to drug trafficking activity. I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating narcotics conspiracies that searches of cellular/mobile telephones yields evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

10. Based upon my training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; use cellular telephones, emails, and text messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation,

5

the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, and the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds.

11. I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

12. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine. Typically, couriers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

13. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a

smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

**FACTS SUPPORTING PROBABLE CAUSE**

14. On July 7, 2017, at approximately 1205 hours, Diamond Denise LUSTER, a United States citizen, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry in vehicle primary lane #5. A Customs and Border Protection Officer (CBPO) working primary lane # 5, contacted LUSTER, the driver and registered owner of a 2016 white Jeep Patriot bearing California license plates. LUSTER was traveling with passenger, Kajanae Tierra WELLS, also a United States citizen. The CBPO asked LUSTER where they were going and she stated they were going to Los Angeles, California. LUSTER claimed that it was her first time crossing in the vehicle. The CBPO checked LUSTER's vehicle crossing history and noticed she had crossed the vehicle before. LUSTER gave a negative declaration to the CBPO. Upon cursory inspection of the vehicle, the CBPO tapped the gas tank and it tapped solid. The CBPO requested assistance, placed LUSTER in handcuffs, and escorted both LUSTER and WELLS to the security office with other CBPOs. The vehicle was then moved to the secondary lot for further inspection.

15. Upon request for assistance from the CBPO, a Canine Enforcement Officer (CEO) responded to the vehicle secondary lot to screen the vehicle driven by LUSTER. The Human and Narcotic Detection Dog (HNDD) alerted to the rear passenger door of the vehicle.

16. A CBPO responded to the vehicle secondary lot to screen the vehicle driven by LUSTER. The CBPO noted anomalies in the gas tank, passenger side front and rear doors and passenger side rear quarter panel.

17. Further inspection of the vehicle resulted in the discovery of 44 total packages concealed in the gas tank of the vehicle. An additional 14 packages removed from the door panels contained a similar substance. The 58 total packages contained a substance, a sample of which field tested positive for the characteristics of methamphetamine, with a total

approximate weight of 31.84 kgs (70.05 lbs); 1 package removed from the door panels and 6 packages removed from the rear passenger side quarter panel contained a substance, a sample of which field tested positive for the characteristics of heroin, with a total approximate weight of 7.98 kgs (17.56 lbs).

18. LUSTER and WELLS were arrested and post-Miranda denied knowledge of the narcotics found in the vehicle. During the post-Miranda interview, LUSTER was permitted to use **Target Device 5** to contact friends in order to notify them of her arrest and the need to retrieve her personal belongings. WELLS was also permitted to use **Target Device 6** during her post-Miranda interview to contact her friend in order to notify her friend of her arrest and also to arrange for the retrieval of her personal belongings.

19. On August 5, 2019, LUSTER and WELLS were arraigned on a two-count Indictment charging them with violating Title 21, United States Code, 952 and 960, Importation of Methamphetamine and Heroin in the Southern District of California in case number 19-CR-02950-BTM.

20. Officers seized the **Target Devices** incident to LUSTER and WELLS' arrest. Specifically, **Target Devices 1 through 5** were seized from LUSTER, and **Target Device 6** was seized from WELLS.[1]

21. As part of my investigation, I reviewed LUSTER's crossing history. LUSTER's last crossing into the United States was through vehicle lanes at the San Ysidro Port of Entry on July 01, 2019. I also reviewed WELLS' crossing history. WELLS' last crossing history was in 2014 via airline travel.

22. Based upon my experience and investigation in this case, I believe that LUSTER and WELLS, as well as other persons, were involved in an ongoing conspiracy to import methamphetamine and heroin or some other federally controlled substance into the United

---

[1] On July 7, 2019, HSI agents obtained a Cellebrite download of **Target Device 5**. Nothing from the review of that download is offered to support probable cause in this application. I also declare that nothing from the review of **Target Device 5** informs my decision to submit this affidavit to obtain a search warrant for the **Target Devices**. I seek this affidavit independent of any information that was seen or reviewed (or not seen) in prior searches.

8

States. Based on my experience investigating narcotics smugglers, I also believe that LUSTER and WELLS may have used the **Target Devices** to coordinate with co-conspirators regarding the importation of methamphetamine or heroin or some other federally controlled substance into the United States.

23.  Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of LUSTER and WELLS such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos, and other digital information are stored in the memory of the **Target Devices**. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct. Therefore, the fact that five separate devices—namely, **Target Devices 1 through 5**, were seized from LUSTER provides further evidence that communications with co-conspirators regarding the importation of methamphetamine or heroin or some other federally controlled substance into the United States may be found on **Target Devices 1 through 5**.

24.  Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure success in transporting their valuable cargo to its destination within the United States. Given this, I request permission to search the **Target Devices** for items listed in Attachment B beginning on **April 7, 2019 up to and including July 7, 2019**. That date range is based on the fact that, based on my training and experience, LUSTER and WELLS likely would have been in communication with co-conspirators to plan and coordinate her smuggle attempt, including acquiring the Vehicle, in the three months leading up to his arrest.

//

9

## METHODOLOGY

25. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26. Following the issuance of this warrant, I will collect the subject cellular/mobile telephones and subject it to analysis. All forensic analysis of the data contained within the telephones and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

28. Based on all of the facts and circumstances described above, there is probable cause to conclude that LUSTER and WELLS used the **Target Devices** to facilitate violations of Title 21, United States Code, Sections 952 and 960.

29. Because the **Target Devices** were promptly seized during the investigation of LUSTER and WELLS trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by LUSTER and WELLS continues to exist on the **Target Devices**.

30. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Marina Griffin
HSI Special Agent

Subscribed and sworn to before me this __26__ day of August, 2019.

Hon. Bernard G. Skomal
United States Magistrate Judge

11